1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8
9  SARINA M. STRIPED-WOLF,              No. 2:12-CV-0572-JTR
10
               Plaintiff,               ORDER GRANTING
11                                       DEFENDANT'S MOTION
12             v.                        FOR SUMMARY JUDGMENT
13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,
15
               Defendant.
16
17
18         **BEFORE THE COURT** are Cross-Motions for Summary Judgment.  ECF
19  No. 15, 17.  Attorney Maureen J. Rosette represents Sabrina M. Striped-Wolf
20  (Plaintiff); Special Assistant United States Attorney Jeffrey R. McClain represents
21  the Commissioner of Social Security (Defendant).  The parties have consented to
22  proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative
23  record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for
24  Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.
25                            **JURISDICTION**
26         Plaintiff filed an application for Supplemental Security Income Benefits on
27  April 29, 2009, alleging disability since August 1, 2001, due to severe anxiety and
28  depression.  Tr. 49, 173.  The application was denied initially and upon

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

reconsideration.  Administrative Law Judge (ALJ) Caroline Siderius held hearings on November 16, 2010, and March 22, 2011, Tr. 42-58, 59-76, and issued an unfavorable decision on April 7, 2011, Tr. 18-29.  The Appeals Council denied review on August 20, 2012.  Tr. 1-6.  The ALJ's April 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 15, 2012.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on August 29, 1975, and was 25 years old on the alleged onset date, August 1, 2001.  Tr. 173.  She completed high school and also has special job training in broadcasting from the Spokane Skills Center.  Tr. 194.  Plaintiff indicated she stopped working on August 1, 2002, because she could not force herself to work anymore.  Tr. 189.  She stated she is unable to go back to work due to severe depression which causes her to anger easily and have a lack of energy, extreme fatigue, and difficulty getting out of bed in the mornings.  Tr. 189.  She testified at the administrative hearing she cannot be around large groups of people and has "panic attacks" where she will hyperventilate and feel unable to breathe.  Tr. 49.  She stated she last worked as a cashier at a deli for four days in 2005.  Tr. 46-47.

Plaintiff testified that she started using marijuana and methamphetamine when she was 21, in 1996, and used those drugs continuously until 2006.  Tr. 53.  As a result of her drug use and domestic violence issues, her children were taken away from her by Child Protective Services and eventually adopted by another family.  Tr. 48, 54.  Plaintiff reported she completed drug treatment and has been clean since 2006.  Tr. 48.  The evidence of record, however, demonstrates that she

did not complete treatment, Tr. 508, and continued to use methamphetamines in late 2008. Tr. 481, 505. In a function report Plaintiff completed in September 2006, Plaintiff indicated she was able to cook, clean, do laundry and care for her two children, one of which was a newborn at that time. Tr. 200-202.

Kent Layton, Ph.D., testified as a medical expert at the hearing held on March 8, 2011. Tr. 62-70. Dr. Layton summarized Plaintiff's medical history, Tr. 65-68, and indicated the most recent medical information was similar to his opinion regarding Plaintiff: "she has problems socially," Tr. 67. He opined that when Plaintiff is compliant with her medications, and off drugs, she does pretty well. Tr. 68. Dr. Layton stated that self-medicating with drugs and non-compliance with treatment medications exacerbates all of her symptoms. Tr. 68. Dr. Layton found that Plaintiff had marked social limitations, noting that "social" is by far her worst impairment. Tr. 67-68. He indicated Plaintiff's ability to interact appropriately with the general public would most likely be markedly impaired. Tr. 68. He further opined that Plaintiff's ability to ask simple questions and request assistance would be moderately limited, to accept instructions and respond to public criticism would be moderately limited, to get along with co-workers would be moderately limited and to "maintain a social appropriate behavior and basic standards of neatness, none." Tr. 69.

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 29, 2009, the application date.[1] Tr. 20. The ALJ determined, at step two, that Plaintiff had the following severe impairments: depression, anxiety, personality disorders and obesity. Tr. 20. At step three, the ALJ found Plaintiff's

---

[1]Although Plaintiff alleges a disability onset date of August 1, 2001, Supplemental Security Income Benefits are not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

severe impairments did not meet or medically equal a listed impairment.  Tr. 20.
The ALJ assessed Plaintiff's RFC and determined she could perform medium
exertion level work with the following limitations:  she can stand/walk up to 6
hours a day; sit up to 6 hours a day; needs to change positions once an hour; cannot
use ladders, ropes and scaffolds; would be capable of one to three step tasks; could
have no more than average production requirements; could have only superficial
contact with the public, co-workers, and supervisors; and could only mainly work
independently.  Tr. 22.

At step four, the ALJ concluded Plaintiff was unable to perform any of her
past relevant work.  Tr. 28.  At step five, the ALJ found that, considering
Plaintiff's age, education, work experience and RFC, and based on the testimony
of the vocational expert, Plaintiff was able to perform work existing in significant
numbers in the national economy.  Tr. 28-29.  The ALJ thus determined that
Plaintiff was not under a disability within the meaning of the Social Security Act at
any time from April 29, 2009, the application date, through the date of the ALJ's
decision, April 7, 2011.  Tr. 29.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set
out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is
reviewed de novo.  *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The
decision of the Commissioner may be reversed only if it is not supported by
substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d
1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a
mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way,
substantial evidence is such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401
(1971).  If the evidence is susceptible to more than one rational interpretation, the

Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

**ISSUES**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred because she is more limited from a psychological standpoint than what was determined by the ALJ.  ECF No. 15 at 8.  Plaintiff specifically argues the ALJ failed to properly consider the opinions of the medical expert and several examining medical professionals regarding Plaintiff's psychological limitations.  ECF No. 15 at 8-15.

**DISCUSSION**

**A.    Plaintiff's Credibility**

While Plaintiff has not challenged the ALJ's finding that Plaintiff is not fully credible, Tr. 23, the undersigned finds the ALJ's credibility determination significant in this case.

Plaintiff was found by the ALJ to be not entirely credible, Tr. 23, and the ALJ's determination in this regard is uncontested by Plaintiff.  *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)  (holding that issues not specifically and distinctly contested in a party's opening brief are considered waived).  Consequently, it is undisputed that the ALJ properly determined Plaintiff was not fully credible in this matter.  Since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately

accorded little weight to medical reports based primarily on Plaintiff's subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

**B.    Mental Limitations**

As noted above, Plaintiff's contention in this case is that the ALJ erred by failing to accord proper weight to the opinions of the medical expert and several other medical professionals regarding Plaintiff's psychological limitations. ECF No. 15 at 8-15.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). This Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). When the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ indicated that while the record reflects Plaintiff has difficulty dealing with people, Plaintiff also reported she has a friend who checks on her daily, she has lots of friends that call and visit her, and she goes to the store with her sister-in-law on a regular basis. Tr. 21. The ALJ indicated this level of social activity demonstrates Plaintiff is capable of sustaining personal relationships and friendships. Tr. 21. The ALJ ultimately found that Plaintiff has moderate to

marked difficulties in social functioning.  Tr. 21.  These social limitations are reflected in the ALJ's RFC determination which held that Plaintiff would be capable of only one to three step tasks; could have no more than average production requirements; could have only superficial contact with the public, co-workers, and supervisors; and could only mainly work independently.  Tr. 22.  The undersigned finds the ALJ's interpretation of the medical record is supported by substantial evidence.  *See infra*.

### 1.    Dr. Layton

Dr. Layton testified as a medical expert at the administrative hearing.  Tr. 62-70.  Dr. Layton opined that when Plaintiff is compliant with her medications, and off drugs, she does pretty well, but when Plaintiff is self-medicating with drugs and non-compliant with treatment all of her symptoms are exacerbated.  Tr. 68.  Dr. Layton found that Plaintiff had marked social limitations, noting that "social" is by far her worst impairment.  Tr. 67-68.  He indicated Plaintiff's ability to interact appropriately with the general public would most likely be markedly impaired.  Tr. 68.  He further opined that Plaintiff's ability to ask simple questions and request assistance would be moderately limited, to accept instructions and respond to public criticism would be moderately limited, to get along with co-workers would be moderately limited and "maintain a social appropriate behavior and basic standards of neatness, none."  Tr. 69.

The ALJ accorded Dr. Layton's testimony significant weight.  Tr. 28.  The ALJ adopted Dr. Layton's conclusion of significant social limitations and interpreted Dr. Layton's opinion as limiting Plaintiff to "superficial contact with the public, co-workers and supervisors" and "mainly working independently."  Tr. 21-22.  When these limitations were presented to the vocational expert, the vocational expert testified the hypothetical individual would be capable of performing work existing in significant numbers in the national economy.  Tr. 72-74.

1

2. **Dr. Chandler**

2        On November 2, 2006, Plaintiff was examined by Samantha Chandler,

3  Psy.D.  Tr. 369-372.  Plaintiff complained she was depressed and indicated her

4  ability to work was affected because she has difficulty being around people.  Tr.

5  369.  At the consultative examination, Plaintiff denied drinking alcohol or using

6  drugs and reported CPS filed a dependency case on her children only because of

7  concerns about domestic violence, not due to drug abuse.  Tr. 370.  Plaintiff

8  indicated she spoke to her younger brother on the telephone daily and has lots of

9  friends that call her every day and come to visit a couple of times a week.  Tr. 371.

10  Dr. Chandler diagnosed Depressive Disorder, NOS (by history, self-report), and

11  gave Plaintiff a Global Assessment of Functioning score of 61.[2]  Tr. 372.

12        It was noted Plaintiff was able to follow through on many of her activities of

13  daily living, and she had frequent contact with friends and her brother.  Tr. 372.  It

14  was further noted that she was able to carry out simple, three step instructions and

15  interact appropriately with the examiner, but her **reported** problems with

16  authority, irritable presentation, and low motivation would adversely affect her

17  ability to secure and maintain a job, interact with the public and co-workers, and

18  respond appropriately to changes in the workplace.  Tr. 372.

19        The parties' briefing fails to discuss Dr. Chandler's report, and the ALJ

20  accorded Dr. Chandler's opinion little weight as it was inconsistent with the

21  medical evidence and her findings on examination.  Tr. 24.  The ALJ noted that Dr.

22  Chandler reported Plaintiff could be misrepresenting her symptoms, but still based

23  her conclusions on Plaintiff's self-reports.  Tr. 24.  Nevertheless, Dr. Chandler's

24  _____

25        [2]A GAF of 70-61 is characterized as:  "Some mild symptoms or some

26  difficulty in social, occupational, or school functioning, but generally functioning

27  pretty well."  Diagnostic and Statistical Manual of Mental Disorders 12 (3d ed.

28  Rev. 1987).

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

2006 report is informative as to Plaintiff's social functioning because it reveals Plaintiff spoke to her younger brother on the telephone daily and had lots of friends call her every day and come to visit a couple of times a week.  Tr. 371.

### 3.    Drs. Mee and Gentile

On November 16, 2006, state agency reviewing physician, Sean Mee, Ph.D., opined that Plaintiff was able to carry out simple, three step instructions, but her ability to respond appropriately to changes in the work place would be affected and working away from the public was recommended given Plaintiff's **self-reported** problems with authority and low motivation.  Tr. 376.  Dr. Mee filled out a Psychiatric Review Technique form indicating Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.  Tr. 388.  On May 8, 2007, Mary A. Gentile, Ph.D., reviewed the record and affirmed Dr. Mee's opinion.  Tr. 398.

Again, the parties do not discuss the opinions of Drs. Mee and Gentile.  The ALJ accorded these medical professionals "some weight" but noted the mild limitations on activities of daily living was inconsistent with the medical evidence which indicated Plaintiff had no limitations in this area.  Tr. 25.  The finding of difficulties in maintaining social functioning, and thus the recommendation of working away from the public, as well as the ability to carry out simple, three step instructions was incorporated in the ALJ's RFC determination.  Tr. 22.

### 4.    Mr. Knight

On November 16, 2007, Plaintiff was examined by Michael Knight, MA, LMHC.  Tr. 440-444.  Plaintiff reported to Mr. Knight that she had left her previous jobs in fast food, nursing homes and gas stations because the work was

///
///
///

redundant.[3]  Tr. 440.  Plaintiff reported she had used methamphetamines for five years but did not currently use the drug.  Tr. 442.  Mr. Knight indicated he believed Plaintiff could be minimizing her drug and/or alcohol use.  Tr. 442.  Later medical records reveal that Plaintiff continued to use methamphetamine until late 2008.  Tr. 481 (November 2008), 505 (August 2008).  Given Plaintiff's **report** of a history of severe trauma and **reported** thoughts of suicide and taking the lives of her husband and children, Mr. Knight diagnosed Major Depressive Disorder without psychotic features; rule out postpartum depression; PTSD and Panic disorder with Agoraphobia and assessed a GAF score of 45.[4]  Tr. 443-444.  Mr. Knight indicated on November 4, 2008, that Plaintiff had experienced a moderate decrease in symptoms of depression and suicidal ideation.  Tr. 436.  It was noted that Plaintiff did not follow through on treatment recommendations and had discontinued therapy.  Tr. 436.

The ALJ discussed Mr. Knight's records and specifically noted Mr. Knight's report that Plaintiff did not follow through with treatment recommendations and that Plaintiff could thus make no further progress on her issues.  Tr. 23.  Mr. Knight's report is consistent with Dr. Layton's testimony, which the ALJ accorded substantial weight, that when Plaintiff is non-compliant with treatment, and/or using drugs, her symptoms are exacerbated.  Tr. 68.

///

---

[3]Plaintiff's report of leaving previous jobs because she was bored with the work is inconsistent with her claim of disabling limitations preventing her from working.

[4]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders-IV 32 (4th ed. 1994).

1    **5.   Dr. Rosekrans' 2009 Evaluation**

2         On February 23, 2009, Plaintiff underwent a consultative examination with

3    Frank Rosekrans, Ph.D.  Tr. 504-508.  Plaintiff reported to Dr. Rosekrans that she

4    could not work because "I am severely depressed."  Tr. 504.  Plaintiff indicated she

5    used methamphetamines sporadically for 9 years, last using in August 2008.  Tr.

6    505.  She reported she lost custody of her two children due to domestic violence

7    and drug use in July 2007.  Tr. 504.  It was reported that after she lost custody of

8    her children, she stopped attending drug treatment because she no longer had a

9    reason to continue with the treatment.  Tr. 504, 508.  Dr. Rosekrans diagnosed

10   Major Depressive Disorder, Single Episode, Severe, Without Psychotic Features

11   and Amphetamine Dependence, Early Full Remission, and assessed a GAF score

12   of 55.[5]  Tr. 508.  He indicated Plaintiff's depression could be related to her drug

13   use and opined that due to the severity of her depression, she was unlikely to be

14   able to work for the next six months.[6]  Tr. 508.  Dr. Rosekrans additionally filled

15   out a Psychological/Psychiatric Evaluation form on February 23, 2009, which

16   indicated Plaintiff had a marked limitation on her ability to respond appropriately

17   to and tolerate the pressures and expectations of a normal work setting.  Tr. 502.

18   However, Dr. Rosekrans again noted the limitations assessed on the form were

19   expected to last only a maximum of six months.  Tr. 503.

20        In any event, the limitations assessed by Dr. Rosekrans in February 2009 are

21   not necessarily inconsistent with the ALJ's RFC determination in this case.  First,

22   Dr. Rosekrans noted that Plaintiff failed to complete drug treatment because she

23

24        [5]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in

25   social, occupational, or school functioning.  Diagnostic and Statistical Manual of

26   Mental Disorders 32 (4th ed. 1994).

27        [6]The assessed limitations would thus not meet the duration requirements of

28   the Act (one year).  42 U.S.C. § 1382c(a)(3)(A).

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

believed she no longer had a reason to continue with the program and that her depression could be related to her drug use. Tr. 508. This report is consistent with Dr. Layton's testimony, which the ALJ accorded significant weight, that when Plaintiff is compliant with her treatment, and off drugs, she does pretty well. Tr. 68. Second, while Dr. Rosekrans' check-box form[7] reflects a marked restriction, his narrative report and GAF score indicate Plaintiff had only moderate restrictions in functioning, a finding fairly consistent with the ALJ's determination.

### 6.    Dr. Quackenbush

On March 6, 2009, Robert L. Quackenbush, Ph.D., completed a report following a consultative examination of Plaintiff. Tr. 480-485. Plaintiff reported a history of substance abuse that included "everything," but indicated she had not used since November 2008. Tr. 481. Dr. Quackenbush indicated the results of the psychological testing were not considered a valid representation of Plaintiff's true capacities due to an exaggeration of deficits. Tr. 483-484. Nevertheless, Dr. Quackenbush indicated Plaintiff's overall judgment appeared markedly limited by personality variables, as well as potential substance use; she cannot manage stress effectively and would be markedly limited in terms of adaptation to the strains of a typical work setting; and she appeared severely limited socially. Tr. 485. Dr. Quackenbush diagnosed Depressive Disorder, NOS; History of substance abuse; and Personality Disorder, NOS, and assessed a GAF of 40.[8] Tr. 484.

---

[7]A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

[8]A GAF of 40-31 indicates "[s]ome impairment in reality testing or communication OR major impairment in several areas, such as work or school,

The ALJ gave "little weight" to Dr. Quackenbush's opinions regarding Plaintiff's limitations, in light of Dr. Quackenbush's conclusion that Plaintiff was possibly exaggerating symptoms. Tr. 26, 483-484.  Dr. Quackenbush noted that the psychological tests he conducted were "not considered a valid representation of [Plaintiff's] true capabilities" and that her score on a memory test was "not considered a valid estimate of [Plaintiff's] abilities, as marked pain behaviors were observed and several responses were suggestive of exaggeration."  Tr. 483-484.  It was proper for the ALJ to accord little weight to opinions based on test scores that were deemed invalid.

The ALJ also specifically accorded no weight to Dr. Quackenbush's opinion regarding Plaintiff's social limitations because they were based on Plaintiff's self-report and were inconsistent with other medical evidence of record demonstrating Plaintiff had good friendships.  Tr. 26.  Dr. Quackenbush conducted only psychological testing, which he concluded was not representative of Plaintiff's true capacities due to an exaggeration of deficits.  Tr. 483-484.  Therefore, the ALJ reasonably inferred Dr. Quackenbush's opinion of Plaintiff's social limitations was based only on Plaintiff's self-reported symptoms.  As stated in Section A, since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to a medical opinion based on Plaintiff's subjective complaints.  *See Tonapetyan*, 242 F.3d at 1149.  The ALJ also appropriately noted Dr. Quackenbush's opinion that Plaintiff suffered from severe social limitations was inconsistent with other medical evidence demonstrating Plaintiff had good friendships: Dr. Chandler's report that Plaintiff had lots of friends call her every day and come to visit a couple of times a week.  Tr. 26, 371.  The ALJ provided valid reasons, supported by the evidence of record, for

---

family relations, judgment, thinking, or mood."  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

1    according no weight to Dr. Quackenbush's opinion regarding Plaintiff's social
2    limitations.

3        **7.    Dr. Everhart**

4        On October 23, 2009, Joyce Everhart, Ph.D., generated a report following a
5    consultative examination of Plaintiff.  Tr. 449-454.  Plaintiff reported to Dr.
6    Everhart that she was smoking marijuana twice a month and using
7    methamphetamine whenever she could in 2008.  Tr. 450.  She indicated she last
8    used marijuana about one year ago.  Tr. 450.  Plaintiff reported the main reason she
9    was unable to work is her anxiety.  Tr. 452.  Dr. Everhart diagnosed Depressive
10   Disorder, Not Otherwise Specified (NOS), currently mild, apparently treated with
11   medication; Polysubstance Abuse (cannabis, methamphetamine), in sustained full
12   remission as per self-report and Alcohol Abuse, in sustained full remission as per
13   self-report, but it was "not known if she is a credible witness with regard to drug
14   and alcohol history"; PTSD, chronic, delayed; Anxiety Disorder, NOS; and
15   Personality Disorder, NOS, with passive-aggressive and borderline features.  Tr.
16   453.  Dr. Everhart assessed a GAF of 55-60.[9]  Tr. 453.  Dr. Everhart indicated
17   Plaintiff does not need help completing her activities of daily living; socially she
18   presented as mildly depressed; cooperation was minimal; test results did not
19   suggest difficulty with executive functioning; she was able to listen, understand,
20   remember and follow simple directions; her attention, concentration and
21   intellectual ability appeared to be within normal limits; her persistence and pace
22   were good; she did not appear easily distracted; and she remained on task.  Tr. 453.
23   Dr. Everhart noted based on Plaintiff's "self-report" of difficulty leaving her house,
24   ///

25   _____

26       [9]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in
27   social, occupational, or school functioning.  See Diagnostic and Statistical Manual
28   of Mental Disorders 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

Plaintiff may have some difficulty maintaining regular attendance during an eight-hour day, 40-hour week.  Tr. 453.

The ALJ gave Dr. Everhart's opinion, which is fairly consistent with the ALJ's RFC assessment, "significant weight."  Tr. 26.  Although the ALJ did not credit Dr. Everhart's finding that Plaintiff may have some difficulty maintaining regular attendance during an eight-hour day, 40-hour week, Tr. 453, that conclusion was based on Plaintiff's self-report of difficulty leaving her house.  As previously indicated, since Plaintiff was properly found by the ALJ to be not entirely credible, it was appropriate for the ALJ to accord little weight to a medical opinion based on Plaintiff's self-reported symptoms.  *See Tonapetyan*, 242 F.3d at 1149.  The ALJ appropriately rejected that portion of Dr. Everhart's opinion as based on Plaintiff's non-credible self-report.  Tr. 26.

### 8.   Drs. Gardner and Beaty

On December 5, 2009, state agency reviewing physician, Jerry Gardner, Ph.D., opined that Plaintiff would be capable of doing both simple and complex tasks and would be able to interact appropriately with coworkers and the public on a superficial basis, but her anxiety may occasionally interfere with attendance.  Tr. 458.  Dr. Gardner filled out a Psychiatric Review Technique form indicating Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.  Tr. 470.  On March 16, 2010, Edward Beaty, Ph.D., reviewed the record and affirmed Dr. Gardner's opinion.  Tr. 498.

The parties do not discuss the opinions of state agency reviewing physicians.  The ALJ accorded these medical professionals some weight but also noted the opinion of moderate limitations on activities of daily living was inconsistent with the medical evidence which indicated Plaintiff had no limitations in this area.  Tr. 26-27.  The findings of difficulties in maintaining social functioning, capability of doing both simple and complex tasks, and ability to interact appropriately with

coworkers and the public on a superficial basis were included in the ALJ's RFC determination.  Tr. 22.

### 9.    Dr. Rosekrans' December 2010 Evaluation

On December 16, 2010, Plaintiff was again examined by Dr. Rosekrans.  Tr. 569-577.  Dr. Rosekrans noted that little had changed and his diagnosis was the same as his February 2009 evaluation.  Tr. 569.  However, on this occasion, Dr. Rosekrans assessed a GAF of 40, indicative of major impairment in several areas.  Tr. 570.  It was noted that Plaintiff was able to understand simple instructions; was able to read and respond to questions; could understand, remember and carry out simple instructions; and could be pleasant and cooperative.  Tr. 571.  Dr. Rosekrans opined that Plaintiff had marked limitations in her abilities to communicate and perform effectively in a work setting with public contact, to communicate and perform effectively in a work setting with limited public contact, and to maintain appropriate behavior in a work setting.  Tr. 571.

The ALJ accorded Dr. Rosekrans' opinion "little weight," finding it was based on Plaintiff's self-report and speculative, without mention of particular evidence to support his conclusions.  Tr. 27.  The ALJ noted a review of Dr. Rosekrans' report revealed subtle suggestions that Plaintiff attempted to portray herself in a negative or pathological manner in particular areas.  Tr. 27, 576.  The ALJ indicated Dr. Rosekrans concluded that some concern about distortion of the clinical picture must be raised and the clinical hypotheses presented in the report should be viewed with this in mind.  Tr. 27, 575.  Dr. Rosekrans further found that the clinical scale elevations "may overrepresent the extent and degree of significant test findings in certain areas" and that Plaintiff reported a level of depressive symptomatology that was "unusual even in clinical samples."  Tr. 27, 576.  The ALJ properly rejected Dr. Rosekrans' opinion for using tests that were potentially impacted by Plaintiff's manipulation and for basing some of his findings on Plaintiff's non-credible self-report.

As noted above, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.  *Fair*, 885 F.2d at 604.  Based on the foregoing, the ALJ did not err by disregarding those portions of the medical reports indicated above when formulating her hypothetical to the vocational expert, Ms. Jenni Lawson.  The ALJ's rationale is supported by substantial record evidence. *Roberts*, 66 F.3d at 184.  The weight of the record evidence supports the ALJ's ultimate determination in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error. Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

DATED January 9, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 18